[Cite as *State v. Malorni*, 2024-Ohio-1122.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| STATE OF OHIO, | **CASE NO. 2023-P-0050** |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the<br>Court of Common Pleas |
| DEANNA L. MALORNI, | |
| Defendant-Appellant. | Trial Court No. 2022 CR 00969 |

**O P I N I O N**

Decided: March 25, 2024
Judgment: Reversed; remanded

*Victor V. Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder* and *Kristina K. Reilly*, Assistant Prosecutors, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Jay M. Schlachet*, 55 Public Square, Suite 1600, Cleveland, OH 44113 (For Defendant-Appellant).

EUGENE A. LUCCI, P.J.

{¶1} Appellant, Deanna L. Malorni, appeals the judgment sentencing her to an aggregate term of 8 to 12 years of imprisonment on three felony offenses to which Malorni had entered guilty pleas. We reverse the sentencing entry, vacate Malorni's pleas, and remand this matter to the trial court for further proceedings consistent with this opinion.

{¶2} In 2022, the Portage County Grand Jury indicted Malorni on three felony counts: involuntary manslaughter, a first-degree felony, in violation of R.C. 2903.04; corrupting another with drugs, a second-degree felony, in violation of R.C. 2925.02; and

aggravated drug trafficking, a fifth-degree felony, in violation of R.C. 2925.03. These charges stemmed from allegations that Malorni was involved in a drug transaction that led to a fatal overdose.

{¶3} Malorni initially entered not-guilty pleas to the charges. However, following plea negotiations, on March 13, 2023, Malorni entered guilty pleas to amended counts of involuntary manslaughter, a second-degree felony, and attempted corrupting another with drugs, a third-degree felony, together with the count of aggravated drug trafficking as originally charged in the indictment.[1] The trial court accepted Malorni's pleas, ordered a presentence investigation and report, ordered Malorni to be evaluated for NEOCAP and PARC, and continued Malorni's bond with modifications pending sentencing. Four days after the trial court accepted Malorni's pleas, a magistrate issued an order finding that Malorni violated the terms of her bond by absconding after submitting a drug test, and the magistrate ordered the clerk to issue a warrant for her arrest to the sheriff's department.

{¶4} Thereafter, Malorni was apprehended. The matter proceeded to sentencing on June 20, 2023. At commencement of the sentencing hearing, Malorni moved to withdraw her plea, with defense counsel stating, "I understand the State and the Court has had some concern based on some things that may or may not have transpired subsequent to the -- the plea during the pendency of the PSI." The state responded in opposition to withdrawal of the plea, stating that it believed Malorni was having "buyer's remorse" because "she knows she's in trouble with the Court and with the State of Ohio."

---

1. Malorni specifically acknowledges in her brief that she is not challenging the "attempted involuntary manslaughter" plea on the basis that such does not constitute an offense under Ohio law. *See State v. Toms*, 2d Dist. Clark No. 2000 CA 64, 2001 WL 1018441, *1 (Sept. 7, 2001) (Where defendant negotiated a plea agreement to "attempted involuntary manslaughter," any error in accepting the plea would be invited error.)

2

The trial court denied the motion and proceeded to sentencing. The trial court sentenced Malorni to an indefinite sentence of 8 to 12 years of prison on the attempted involuntary manslaughter count, 36 months of imprisonment on the corruption count, and 12 months of imprisonment on the aggravated drug trafficking count, with all sentences to run concurrently with each other but consecutively to cases in "Judge Doherty's" court.

{¶5} After Malorni noticed an appeal from the sentencing entry, she sought a limited remand, which this court granted, for purposes of the trial court clarifying the cases to which her sentence was to run consecutively. On remand, the trial court issued a nunc pro tunc entry, indicating as follows:

> Sentencing in Judge Doherty's Court for Case No. 2021CR87 and Case No. 2021CR302 is as follows:
>
> The Defendant shall be sentenced to the Ohio Department of Rehabilitation and Corrections in Case No. 2021CR87 for a period of Twelve (12) months to be served for the offense of "Aggravated Possession of Drugs", which shall run consecutively to Case No. 2021CR302 for a period of Twelve (12) months to be served for the offense of "Receiving Stolen Property", for an aggregate total of Twenty-Four (24) months, or until legally released.

(Bold typeface omitted.)

{¶6} In her first assigned error, Malorni argues:

{¶7} "Appellant's plea must be vacated in violation of Crim. R. 11 as not being entered knowingly, intelligently and voluntarily."

{¶8} In her first assigned error, Malorni raises two issues for our review: (1) whether the trial court erred by failing to advise her that a guilty plea could result in the violation or revocation of her community control and that prison sentences imposed in

3

Case No. 2023-P-0050

each case could be run consecutively, and (2) whether the trial court erred by incorrectly advising Malorni as to when she would be eligible to file for judicial release.

{¶9} As we find the second issue raised by Malorni to be dispositive of the appeal, we address only the issue pertaining to the misinformation provided to Malorni regarding judicial release.

{¶10} "'When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution.'" *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 7, quoting *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). "'In considering whether a guilty plea was entered knowingly, intelligently and voluntarily, an appellate court examines the totality of the circumstances through a de novo review of the record to ensure that the trial court complied with constitutional and procedural safeguards.'" *State v. Siler*, 11th Dist. Ashtabula No. 2010-A-0025, 2011-Ohio-2326, ¶ 12, quoting *State v. Eckler*, 4th Dist. Adams No. 09CA878, 2009-Ohio-7064, ¶ 48. "Crim.R. 11 was adopted in 1973, giving detailed instruction to trial courts on the procedure to follow when accepting pleas." *Veney* at ¶ 7. Crim.R. 11 "'ensures an adequate record on review by requiring the trial court to personally inform the defendant of [her] rights and the consequences of [her] plea and determine if the plea is understandingly and voluntarily made.'" *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, ¶ 11, quoting *State v. Stone*, 43 Ohio St.2d 163, 168, 331 N.E.2d 411 (1975); *see also State v. Nero*, 56 Ohio St.3d 106, 107, 564 N.E.2d 474 (1990).

{¶11} Crim.R. 11(C)(2) provides:

4

In felony cases the court may refuse to accept a plea of guilty * * * and shall not accept a plea of guilty * * * without first addressing the defendant personally * * * and doing all of the following:

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty * * *, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶12} Here, Malorni acknowledges that a trial court is not required to advise a defendant about the potential for judicial release prior to accepting a defendant's guilty plea pursuant to Crim.R. 11(C)(2). *See State v. Mitchell*, 11th Dist. Trumbull No. 2004-T-0139, 2006-Ohio-618, ¶ 14 ("Unless incorporated into a plea agreement, the trial court is not under an obligation to inform a defendant regarding his eligibility for judicial release." (Citations omitted.)). However, Malorni maintains that when a defendant is *misinformed* by the court or counsel on this issue and relies on the misinformation in entering a plea, the plea may be vacated as having not been knowingly, intelligently, and voluntarily entered. In support, Malorni cites the several cases noted in this court's decision in *State v. Brownlee*, 11th Dist. Lake No. 2022-L-075, 2023-Ohio-1090, ¶ 17, *appeal not allowed*, 170 Ohio St.3d 1482, 2023-Ohio-2236, 211 N.E.3d 1216, ¶ 17.

5

Case No. 2023-P-0050

**{¶13}** In *Brownlee* at ¶ 17, we noted that the appellant there relied on several appellate cases holding that a plea was invalid where the defendant was misinformed regarding judicial release. *Id.* Included in such cases were *State v. Davner*, 2017-Ohio-8862, 100 N.E.3d 1247, ¶ 57 (8th Dist.), *State v. Williams*, 8th Dist. Cuyahoga Nos. 104078 and 104849, 2017-Ohio-2650, ¶ 15, and *State v. Ealom*, 8th Dist. Cuyahoga No. 91455, 2009-Ohio-1365, ¶ 26-28. We noted that "the point of this principle is '[w]hen a defendant is induced to enter a guilty plea by erroneous representations as to the applicable law, the plea has not been entered knowingly and intelligently.'" *Brownlee* at ¶ 17, quoting *Mitchell* at ¶ 15, citing *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996).

**{¶14}** We further explained, in distinguishing *Davner* from the circumstances present in *Brownlee*, that, "[i]n *Davner*, the trial court informed the defendant of the potential maximum sentences he could receive during the plea colloquy." *Brownlee* at ¶ 18. "The defendant, however, represented he did not understand, based upon his attorney's representations regarding judicial release, that if he received a sentence of five or more years, he would not be eligible for judicial release until he served five years of that sentence." *Id.*, citing *Davner* at ¶ 56. In *Davner*, "[t]he record supported the defendant's claim that his attorney failed to provide him with complete and accurate legal advice regarding his eligibility for judicial release before entering his guilty pleas." *Brownlee* at ¶ 18, citing *Davner* at ¶ 56. "To wit, his attorney advised the defendant he would be eligible for judicial release after serving six months of his sentence; the attorney did not explain, however, that if he received a sentence of five years or longer, he would not be eligible for judicial release until after five years." *Brownlee* at ¶ 18, citing *Davner*

6

at ¶ 56. "The Eighth Appellate District determined, under the circumstances before it, the defendant presented credible evidence establishing a reasonable probability that, but for counsel's incomplete advisements regarding judicial release, he would not have entered his plea." *Brownlee* at ¶ 18, citing *Davner* at ¶ 57.

{¶15} Here, with respect to judicial release, the following exchanges occurred on the record prior to Malorni entering her plea:

> THE COURT: This is 22 CR 969, State of Ohio versus Deanna M[a]l[or]ni. * * *
>
> We're set today for a pre-trial status conference.
>
> [The prosecutor], it's my understanding that you have made an offer, and I'd like you to put that on the record.
>
> [THE PROSECUTOR]: Thank you, Your Honor.
>
> The State has made a final offer to plead to an Amended Count One, Attempted Involuntar[y] Manslaughter, Felony of the Second Degree, as well as Attempted Corrupting Another with Drugs, a Felony of the Third Degree and Aggravated Trafficking for a PSI and victim impact statement. We certainly would be indicating her level of cooperativeness. I know that that would make her potentially available for judicial release after six months.
>
> THE COURT: Okay.
>
> [Defense counsel], is that your understanding of the negotiations?
>
> [DEFENSE COUNSEL]: It is, Your Honor.
>
> Obviously, that was based upon cooperation. That's as far as I'll go about that for my client. I don't want to put much on the record. But with that being said, that is a correct understanding. I've talked to [Malorni] on several occasions regarding that. I -- of course, I'd ask the Court to inquire at this point. We would like to try to continue negotiations, but I understand the State is going to be limiting that time frame, obviously, to go forward on a trial. We've reached out to Dr.

7

Hunter, to see if he can provide any expert testimony. We're in the process of resolving that. Once we know that for sure, if we cannot resolve it, then we'll be asking to secure a trial date.

THE COURT: [The prosecutor], it's my understanding you are leaving this offer open until the end of the day; is that correct?

[THE PROSECUTOR]: That is correct, Your Honor.

THE COURT: Ma'am, you understand what you're looking at here?

[MALORNI]: Yes.

THE COURT: If you're convicted of these crimes you are looking at close to 5 years in prison. Do you understand that?

[MALORNI]: Yes.

THE COURT: And, ma'am, do you understand the State is offering you what is basically a gift?

[MALORNI]: Yes.

THE COURT: I've done a lot of these cases, and told that to [defense counsel] and I told that to [the prosecutor]. When people hear that there are drugs involved, that someone died, even -- no matter what your participation is, that you were there or with it, within the realm of maybe providing these drugs, that's all they listen to. It's very difficult to overcome that. Do you understand that?

[MALORNI]: Yes.

THE COURT: I mean, anything to do with drugs anymore the jury just shuts down.

And I don't know what your involvement was, or if you were involved, but no matter what involvement you have you're liable. Do you understand that?

[MALORNI]: (Indicating.)

THE COURT: Are you rejecting that offer?

8

[MALORNI]: He said to me it was an -- the three -- attempted manslaughter, two F3s I would be pleading to, not an F2.

[DEFENSE COUNSEL]: Your Honor, correct me if I'm wrong, I think the Prosecutor said two F3s, Your Honor.

[THE PROSECUTOR]: No, no. The attempted involuntarily manslaughter is a felony two as well as the aggravated trafficking, and an attempted corrupting another with drugs. If we were going to do the felony of the third degree involuntary, that would mean she'd have to plead to something that is non-probational.

[DEFENSE COUNSEL]: Okay.

[THE PROSECUTOR]: Corrupting Another with Drugs, which is a Felony of the Second Degree.

THE COURT: So the way she worked it out is she would be eligible for judicial release.

[DEFENSE COUNSEL]: Okay. She's eligible for probation. But the felony -- the involuntary becomes a felony two, not a felony three. Okay. That's correct. I misquoted that.

[THE PROSECUTOR]: If she is found guilty of a felony of the second degree she's looking at up to 12 years, which is actual time. There is no judicial release.

[DEFENSE COUNSEL]: That's on the --

[THE PROSECUTOR]: Felony of the second degree, corrupting.

[DEFENSE COUNSEL]: The corrupting, correct.

THE COURT: And that's the one that is going -- the corrupting, they may not be able the (sic.) prove one, but those are pretty easy to prove.

[DEFENSE COUNSEL]: Right. And I believe that has mandatory prison time with that if convicted.

THE COURT: Yes. Yes.

[DEFENSE COUNSEL]: As it stands as the felony two.

9

Case No. 2023-P-0050

THE COURT: Right. Right.

[DEFENSE COUNSEL]: So they're amending that to the felony three, which means mandatory prison.

[MALORNI]: Mandatory prison; isn't it?

[DEFENSE COUNSEL]: If you're convicted. They're offering to amend it to a felony three. The felony two that they're talking about is not mandatory. It's probationable.

THE COURT: Right now what you're facing, looking at the corrupting another with drugs, if you are convicted of that one, is mandatory. You don't get a judicial release.

But she is willing to amend it to an attempted. And I'm not trying to twist your arm, but I just want you to know the real facts about what's going on here, because you have been cooperative, and from what the Prosecutor has told me, and I just would hate to see you go in for mandatory and that I can't do a judicial.

So are you rejecting this offer or accepting it?

[MALORNI]: I could apply for a judicial in six months?

THE COURT: You'd be eligible in six months.

[MALORNI]: Would I be released 'til my sentencing where I was at?

[DEFENSE COUNSEL]: That was one of the things we discussed.

THE COURT: That's something you will have to argue.

[DEFENSE COUNSEL]: There's one more component to what we've negotiated. If maybe we can work that out with that happening?

[THE PROSECUTOR]: You mean if she were to plead guilty to let her out on house arrest during the pendency of the PSI?

[DEFENSE COUNSEL]: That's basically where she's going.

10

[THE PROSECUTOR]: Yes, I would do that.

THE COURT: She would like to make arrangements for her daughter.

[THE PROSECUTOR]: So long as the other part is complied with.

[DEFENSE COUNSEL]: Correct.

THE COURT: So you can make up your mind now, but she's leaving it on the table until Friday, but I don't think it's going to get any better.

[Defense counsel], I know that you've gone over this.

He's a very good attorney. He's very seasoned, so listen to him, his advice. He knows what the evidence is; I don't. Okay? But I can tell you that juries don't like these cases, so -- all right? You want to take the offer?

[MALORNI]: I will accept the offer.

{¶16} Thereafter, a discussion occurred regarding arranging house arrest for Malorni pending sentencing. After a recess, the court came back on the record and stated its understanding as to Malorni entering her plea, after which the following exchange then occurred:

THE COURT: * * *. Anything else, Mr. -- or [the prosecutor]?

[THE PROSECUTOR]: Other than what's stated in the sum and substance of the plea negotiations regarding the PSI, there will be prison time, and the State will be arguing against early release at the appropriate time, but the Court has made some statements regarding that.

THE COURT: And the Defendant would be eligible to file for judicial release after six months.

[DEFENSE COUNSEL]: Six months. Correct, Your Honor. Thank you.

11

{¶17} Thereafter, the court addressed Malorni and conducted a Crim.R. 11(C)(2) plea colloquy. During the colloquy, the court inquired of Malorni:

> Do you understand that the felony of the second degree may bring with it from three years in prison up to 12 years in prison because it's a qualifying count, up to a $15,000.00 fine and court costs; the felony of the third degree may bring with it up to 36 months in prison, up to a $10,000.00 fine and court costs; and the felony of the fifth degree, up to 12 months in prison, up to a $2,500.00 fine and court costs and a license suspension?

Malorni affirmed her understanding. Malorni further affirmed that she had carefully reviewed the written guilty plea with counsel and had no questions regarding anything contained in the document. The written guilty plea provides that the plea agreement is stated entirely as follows: "PSI, VIS, Prison 4 years & 11 months, free to argue against early release." The written guilty plea further provides that the defendant understands that the trial court is not bound to the prosecutor's recommendation. Moreover, the written guilty plea contains a section regarding judicial release, which states, in relevant part:

> I understand that if my prison sentence includes a mandatory prison term, the time for filing my motion for judicial release does not begin to run until the expiration of the mandatory prison term. (R.C. 2929.20 (C)).
>
> I understand that while I may file a motion for judicial release, there are no guarantees that the court will grant my request, unless there is a negotiated plea agreement that a judicial release motion will be granted, which is noted on this form.
>
> I understand that if my aggregated non-mandatory prison sentence is less than 2 years, I am eligible to file for judicial release after I am delivered to prison.
>
> I understand that if my aggregated non-mandatory prison sentence is 2 years or more but less than 5 years, I am eligible

12

Case No. 2023-P-0050

to file for judicial release 180 days after I am delivered to prison.

I understand that if my aggregated non-mandatory prison sentence is 5 years, I am eligible to file for judicial release 4 years after I am delivered to prison.

I understand that if my aggregated non-mandatory prison sentence is more than 5 years but 10 years or less, I am eligible to file for judicial release 5 years after I am delivered to prison.

I understand that if my aggregated non-mandatory prison sentence is more than 10 years, I am eligible to file for judicial release either 5 years after I have been delivered to prison or after serving half of my prison term, whichever is later.

{¶18} Despite the oral statements made on the record to Malorni prior to her entering her plea that she was eligible to file for judicial release in six months, the written guilty plea correctly states that the time at which an offender may file for judicial release is dependent upon the aggregate nonmandatory sentence the offender receives. *Compare* R.C. 2929.20(C)(1)(b) (where an offender is not sentenced to any mandatory prison term, if the aggregated prison term is at least two years but less than five years, an eligible offender may file a motion for judicial release 180 days after the offender enters prison) *with* R.C. 2929.20(C)(1)(d) (where an offender is not sentenced to any mandatory prison term, if the aggregated prison term is more than five years but not more than ten years, an eligible offender may file a motion for judicial release after serving five years). As the trial court ultimately imposed an aggregate prison sentence of 8 to 12 years, Malorni is not eligible to file for judicial release in six months.

{¶19} However, the trial court orally informed Malorni that she would be eligible to file for judicial release in six months, and the focus of our review of the validity of a plea is "on whether *the dialogue* between the court and the defendant demonstrates that the

13

defendant understood the consequences of h[er] plea[.]" (Emphasis added.) *Dangler*, 2020-Ohio-2765, at ¶ 22. We recognize that "an alleged ambiguity during a Crim.R. 11 oral plea colloquy may be clarified by reference to other portions of the record, including the written plea, in determining whether the defendant was fully informed of the right in question." *State v. Barker*, 129 Ohio St.3d 472, 2011-Ohio-4130, 953 N.E.2d 826, ¶ 25. Thus, where a defendant has received notifications of the constitutional rights that she is waiving by entering a plea, other parts of the record may be used in reviewing the totality of the circumstances as to whether the plea was knowingly, voluntarily, and intelligently entered. *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 43.

{¶20} Nonetheless, here, there was no ambiguity in the trial court's statements as to judicial release. Nowhere on the record at the change of plea hearing did the court or counsel indicate to Malorni that her eligibility to file for judicial release in six months was contingent on the length of the sentence the trial court imposed. Despite the advisements in the written plea agreement, the court and counsel repeatedly and clearly misinformed Malorni that she would be eligible to file for judicial release in six months. Further, it is evident on the face of the record that Malorni relied on these inaccurate oral advisements when entering her plea.

{¶21} Thus, we agree with Malorni insofar as she argues that the flat statements of the trial court and counsel that she could file for judicial release in six months, and Malorni's reliance on these statements in entering her plea, render her plea invalid.

{¶22} Accordingly, to this extent Malorni's first assigned error has merit. As her plea must be vacated for the reasons set forth above, relative to the second issue

14

presented in her first assigned error, we need not reach the basis for vacating the plea addressed in the first issue.

{¶23} In her second and third assigned errors, Malorni maintains:

[2.] The trial court erred when it denied appellant's pre-sentence motion to withdraw guilty plea.

[3.] The trial court erred and imposed a consecutive prison sentence which was contrary to law and not supported by the record where the trial court failed to find all R.C. 2929.14(C)(4) factors and failed to determine and consider the aggregate prison sentence ordered.

{¶24} Our disposition of Malorni's first assigned error renders her second and third assigned errors moot, and we decline to address them.

{¶25} The judgment is reversed, Malorni's pleas are vacated, and this matter is remanded to the trial court for further proceedings consistent with this opinion.

MARY JANE TRAPP, J.,

JOHN J. EKLUND, J.,

concur.

15

Case No. 2023-P-0050