**[Cite as *State v. Vokas*, 2024-Ohio-171.]**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 23AP-167 |
| v. | : | (C.P.C. No. 20CR-5046) |
| Kelly Dale Vokas, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on January 18, 2024

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, *Sheryl L. Prichard*, and *Michael A. Walsh*, for appellee. **Argued:** *Michael A. Walsh*.

**On brief:** *Timothy Young*, Ohio Public Defender, and *Mallorie Thomas*, for appellant. **Argued:** *Mallorie Thomas*.

APPEAL from the Franklin County Court of Common Pleas

LELAND, J.

{¶ 1} Defendant-appellant, Kelly Dale Vokas, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas following appellant's entry of a guilty plea to one count of murder, one count of involuntary manslaughter, and one count of aggravated burglary.

**I. Facts and Procedural History**

{¶ 2} On October 26, 2020, appellant was indicted on one count of aggravated burglary, in violation of R.C. 2911.11, two counts of aggravated robbery, in violation of R.C. 2911.01, two counts of aggravated murder, in violation of R.C. 2903.01, four counts of murder, in violation of R.C. 2903.02, and one count of tampering with evidence, in

violation of R.C. 2921.12. The indictment arose out of the deaths of John Blanc, age 77, and Susan Castore, age 75, on October 18, 2020.

{¶ 3} Appellant initially entered a plea of not guilty. On December 16, 2022, appellant withdrew her plea of not guilty and entered a guilty plea to one count of aggravated burglary, one count of murder, and one count of involuntary manslaughter (as a stipulated lesser-included offense of murder).

{¶ 4} During the plea hearing, the prosecutor gave the following recitation of the facts.

> On October 18th of 2020, at 3:05 p.m., the Franklin County Sheriff's Office communication center received a 911 hang-up call from the landline of the residence located at * * * Carilla Lane here in Franklin County. The communication center called the residence back, but the phone rang busy.
>
> Thereafter, Franklin County sheriff's deputies were dispatched to the home and arrived on scene at 3:26 p.m. Upon arrival, deputies noted that all of the doors into the home were locked and there didn't appear to be any forced entry. Upon looking into the windows, deputies saw a female wearing a pink hoodie in a hallway who was crouched down. Deputies further observed this female to be shoving items into her purse. At that time, deputies ordered the female to come to the door, but she ran to the back of the residence and disappeared out of sight for several minutes.
>
> When the female reappeared, she ran to the rear sliding door of the home in an attempt to flee. Deputy [Jason] Hollenbach was stationed at this rear sliding door and tried to stop the female as she exited. The female tried to pull away from the deputy, so she was secured in handcuffs.
>
> In attempting to identify her, deputies looked into the purse she was carrying when she fled the home. Deputies were able to locate her ID and determine that she was the defendant, Kelly Vokas.
>
> Also located in her purse were John Blanc and Susan Castore's Ohio IDs, Susan Castore's checkbook, and a bag of coins.
>
> Deputies then entered the home to check for any other persons or emergencies when they observed what appeared to be drops of blood on the floor.

Thereafter, deputies located a white male later identified as John Blanc on the floor of the first floor bathroom. He was unresponsive and had what appeared to be blood on his face and head. Mr. Blanc was pronounced deceased by Prairie Township medics. And upon autopsy, it was determined that the cause of death for John Blanc was stab wounds of the head and neck, with six total stab wounds.

In continuing to clear the home, deputies observed what appeared to be blood on the floor at the bottom of the basement stairs. Deputies went down and located an unresponsive white female, later identified as Susan Castore, on the basement floor [to] the left of the stairs. She was also unresponsive and had what appeared to be stab wounds, as well as having a rope tied around her head, neck, and body.

Ms. Castore was pronounced deceased by Prairie Township medics as well. And upon autopsy it was determined that the cause of death for Susan Castore was ligature strangulation. She also had a stab wound to the right side of her neck.

During their investigation, deputies collected security doorbell video from two different neighbors of John Blanc and Susan Castore. After reviewing approximately 12 hours of video, defendant is [the] only individual, besides John Blanc, [seen] entering the home that day.

Thereafter, the defendant was transported to Franklin County Sheriff's Office where she was read her rights and did agree to be interviewed. During that interview, the defendant did eventually state that she stabbed both of them.

(Dec. 16, 2022 Tr. at 20-23.)

{¶ 5} Prior to sentencing, the trial court ordered a presentence investigation. On February 24, 2023, the trial court conducted a sentencing hearing. By judgment entry filed February 27, 2023, the trial court sentenced appellant to an indefinite term of 11 years (minimum) to 16 and one-half years (maximum) as to Counts 1 (aggravated burglary) and 4 (involuntary manslaughter), and an indefinite term of 15 years to life as to Count 8 (murder), with the sentences to be served consecutive to each other.

## II. Assignment of Error

{¶ 6} Appellant appeals and assigns the following sole assignment of error for our review:

The Franklin County Common Pleas Court committed plain error when it imposed consecutive sentences. R.C. 2929.14(C)(4); *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177.

## III. Analysis

{¶ 7} Under her single assignment of error, appellant contends the trial court erred in failing to make all required findings under R.C. 2929.14(C) in imposing consecutive sentences. Appellant further argues the court erred in failing to incorporate the requisite findings into its sentencing entry.

{¶ 8} R.C. 2953.08(G)(2) sets forth "the appropriate standard of review '[o]n appeals involving the imposition of consecutive sentences.'" *State v. Dixon*, 10th Dist. No. 15AP-432, 2015-Ohio-5277, ¶ 7, quoting *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶ 28.

{¶ 9} R.C. 2953.08(G)(2) states as follows:

The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

{¶ 10} Thus, in accordance with the above provisions, in considering an appeal of a trial court's judgment imposing consecutive sentences, this court is required to "review the record, including the underlying findings given by the sentencing court, and may 'increase, reduce, or otherwise modify a sentence * * * or may vacate the sentence and remand the

matter to the sentencing court for resentencing' if we clearly and convincingly find the record does not support the sentencing court's findings under R.C. 2929.14(C)(4) or the sentence is otherwise contrary to law." *State v. Bland*, 10th Dist. No. 19AP-826, 2020-Ohio-4662, ¶ 16, quoting R.C. 2953.08(G)(2).

{¶ 11} Under Ohio's consecutive sentencing statute, R.C. 2929.14(C)(4), in order to impose consecutive sentences a trial court must find that: (1) consecutive sentences are "necessary to protect the public from future crime or to punish the offender," (2) such sentences "are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public," and (3) "any of the following" apply:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 12} In addressing a trial court's " 'compliance with R.C. 2929.14(C)(4), we examine whether: (1) the trial court engaged in the correct analysis, and (2) the record contains evidence to support the findings of the trial court.' " *Bland* at ¶ 17, quoting *State v. Knowles*, 10th Dist. No. 16AP-345, 2016-Ohio-8540, ¶ 41. When imposing consecutive sentences, "a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *Bonnell* at syllabus. Further, a "word-for-word recitation of the language of the statute is not required, and as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.* at ¶ 29. In this respect, "appellate courts have been 'fairly deferential

to the trial court' in reviewing R.C. 2929.14(C)(4) challenges and will determine the trial court made requisite findings if reasonably able to 'glean' such findings from the record. *State v. Hairston*, 10th Dist. No. 17AP-416, 2017-Ohio-8719, ¶ 7, quoting *State v. Hargrove*, 10th Dist. No. 15AP-102, 2015-Ohio-3125, ¶ 19-21.

{¶ 13} We note that appellant did not object during the sentencing hearing to the imposition of consecutive sentences, thereby forfeiting all but plain error. *State v. Wilson*, 10th Dist. No. 12AP-551, 2013-Ohio-1520, ¶ 8. Under this standard, "[p]lain error occurs when an error is plain or obvious and affects a substantial right," and "[t]he error must constitute an obvious defect in the legal proceedings, and there must be a reasonable probability the error affected the outcome." *Bland* at ¶ 18, citing *State v. Noriega*, 10th Dist. No. 18AP-979, 2020-Ohio-4201, ¶ 25. This court has previously held "when the record demonstrates that the trial court failed to make the findings required by R.C. 2929.14(C)(4) before imposing consecutive sentences on multiple offenses, 'appellant's sentence is contrary to law and constitutes plain error.' " *State v. Ayers*, 10th Dist. No. 13AP-371, 2014-Ohio-276, ¶ 15, quoting *Wilson* at ¶ 18.

{¶ 14} Appellant contends the trial court's imposition of consecutive sentences is contrary to law because the court failed to make one of the requisite findings under R.C. 2929.14(C). Specifically, while acknowledging the trial court properly analyzed the first and third required findings under R.C. 2929.14(C)(4), appellant maintains the court failed to properly analyze the second required finding, i.e., the proportionality finding that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public."

{¶ 15} In the present case, the trial court made the following findings during the sentencing hearing:

> THE COURT: * * * In issuing consecutive sentences, I find that one sentence is insufficient * * * to adequately punish the defendant and protect the public. That basic finding on the record, it was continuous course of conduct under B, so consecutive sentences are warranted, multiple victims, all the court of appeals find that that's adequate there. I don't think that's an objection.
>
> But I think I need to comment about why I make these additional findings.

I remember doing the plea, and I spent the last three days reading through stuff, * * * and I've had problems from moment one.

These two - - excuse the expression. I know some people don't like it - - senior citizens did not deserve what happened. She came to the house and within minutes there was a 911 call where the phone is left on the floor. Okay. Clearly somebody threw that phone down. And then the nature of the murders going down there - - I had not seen the pictures until today. * * * But the way that the lady was treated in the basement, she drug her body across - - you see the blood running through there. It was cold and calculated. She had stuff from the robbery. * * * She wrapped her head up. You can barely see the top of her head. Okay.

The slashing of the gentleman was severe. She - - somewhere I read that there was a three-and-a-half-inch wound on the lady. Okay. You know, I didn't see a coroner's report. I don't know that to be accurate. But from the pictures it looks like she was stabbed also. * * * It's the way it comes into the timing of it. She arrives at the place and within minutes they're calling 911. It wasn't one of those things where I got there and I changed my mind or something in my history came up, you know.

And I realize she (inaudible) a victim, but the two real victims here are the two people that, unfortunately, people had to bury.

Now, I've been doing this job 18 years. I hate to tell you this isn't the worst case I've seen, ladies and gentlemen, but it's up in my top 10. I just can't see where I can protect the public any other way than giving her consecutive sentences. Okay.

(Feb. 24, 2023 Tr. at 60-62.)

{¶ 16} In response to appellant's contention that the trial court failed to make the required proportionality finding, the state argues the court's comments in this case closely resemble those addressed by this court in several prior decisions, including *Hargrove* and *Dixon*. As both *Hargrove* and *Dixon* involve proportionality review issues similar to those raised in this case, we begin with a consideration of those two cases.

{¶ 17} Under the facts of *Hargrove*, the trial court, in sentencing the appellant to consecutive sentences, made findings that his criminal conduct was "the worst form and

most serious type of telephone solicitation fraud," that "the victims in this case numbered 56 and probably many, many more," and "that appellant prey[ed] upon * * * elderly sympathetic victims who were not rich people." *Hargrove* at ¶ 21. On appeal to this court, the appellant asserted the trial court erred in failing to make the required proportionality finding under R.C. 2929.14(C)(4).

{¶ 18} In *Hargrove*, we rejected the appellant's proportionality challenge, holding that "when a sentencing court finds that an offender has engaged in the worst and most serious conduct prohibited by the law under which he was convicted, the sentencing court believes a consecutive prison term is not disproportionate to the seriousness of the offense." *Id*. at ¶ 17. This court therefore determined that "the trial court's finding that appellant's criminal conduct is the 'worst form of the offense' is a factual finding on which this court can conclude that the sentencing court engaged in the required proportionality analysis by finding that consecutive service is 'not disproportionate to the seriousness of [appellant's] conduct.' " *Id*., quoting *State v. Hartman*, 7th Dist. No. 13 JE 36A, 2014-Ohio-5718, ¶ 31. In addition to addressing the trial court's finding that "appellant's criminal conduct was the worst form and most serious type of telephone solicitation fraud," this court also addressed the court's findings regarding the number of victims and the fact "that appellant prey[ed] upon * * * elderly sympathetic victims who were not rich people," concluding that "the trial court's reference to the number and relative vulnerability of appellant's * * * victims amounts to a finding that consecutive service was not disproportionate to the danger appellant poses to the public." *Id*. at ¶ 21.

{¶ 19} In *Dixon*, the appellant similarly challenged the imposition of consecutive sentences on grounds the trial court did not make all the factual findings required by R.C. 2929.14(C)(4), including a proportionality analysis. On appeal, this court rejected the appellant's challenge, holding in part that "[t]he trial court's statements regarding the relative vulnerability of appellant's victim * * * can be reasonably construed as a finding that consecutive sentences were necessary to protect the public from the danger appellant's criminal conduct poses to the public." *Id*. at ¶ 19, citing *Hargrove* at ¶ 13. Further, this court held "the trial court's conclusion that appellant's criminal conduct was 'more serious' than the conduct normally constituting the offenses indicates that the trial court engaged in the required proportionality analysis." *Id*., citing *Hargrove* at ¶ 17.

{¶ 20} This court has also "acknowledged there is a 'high degree of overlap' between a proportionality finding under [R.C. 2929.14(C)] and a finding under R.C. 2929.14(C)(4)(b) regarding the seriousness and severity of harm caused by an offender's conduct." *Bland* at ¶ 20, quoting *State v. Fields*, 10th Dist. No. 16AP-417, 2017-Ohio-661, ¶ 20. In *Fields*, this court found that "[g]iven the high degree of overlap" between R.C. 2929.14(C)(4)(b) and 2929.14(C)(4), the trial court's use in that case "of the specific language of R.C. 2929.14(C)(4)(b), rather than the language specified by R.C. 2929.14(C)(4), does not alter our perception that the trial court conducted the necessary proportionality analysis and made the required finding" despite the fact "the trial court did not use the words 'disproportionate,' 'danger,' or 'risk.' " *Id.* at ¶ 20.

{¶ 21} In *State v. Richards*, 10th Dist. No. 19AP-259, 2019-Ohio-5325, ¶ 26, we relied on *Fields* in holding that a trial court's "statement at the sentencing hearing that the two offenses constitute separate and distinguishable harms and that no single prison sentence for any term would adequately punish the offender or protect the public from future harm is akin to a finding under R.C. 2929.14(C)(4)(b), and, as such, constitutes a factual finding on which this court can conclude that the sentencing court found that consecutive service is not disproportionate to the seriousness of appellant's conduct." *See also State v. Dixon*, 10th Dist. No. 17AP-884, 2018-Ohio-3759, ¶ 10 (holding that, based on "this court's decision in *Fields*, by stating no single sentence can satisfy that course of conduct, the trial court weighed the severity of consecutive sentences against the seriousness of the conduct"); *State v. Cardwell*, 10th Dist. No. 15AP-1076, 2016-Ohio-5591, ¶ 13 (finding "record supports a 'disproportional' finding" where "trial court made findings regarding the seriousness of appellant's conduct as it relates to the criminal offense and the inadequacy of a single sentence to both fit appellant's conduct and adequately protect the public").

{¶ 22} In the present case, we agree with the state that the language employed by the trial court is similar to the findings at issue in *Hargrove* and *Dixon*. As outlined above, the trial court made statements during the sentencing hearing that the offenses are in the "top 10" of worst cases before the court in 18 years, involving a "continuous course of conduct," with "multiple victims," that appellant took advantage of victims who were "senior citizens," and that "one sentence is insufficient * * * to adequately punish the defendant and protect the public." (Feb. 24, 2023 Tr. at 62, 60.) While the trial court "did

not expressly employ the term 'disproportionate' in its consecutive sentence findings," the above statements indicate the trial court "addressed the seriousness of appellant's conduct, considered the danger [appellant] poses to the public, and the inadequacy of a single sentence." *Richards* at ¶ 27, citing *State v. Ali*, 10th Dist. No. 18AP-935, 2019-Ohio-3864. As a result, we can "discern from the record that the trial court engaged in the appropriate analysis and made the requisite proportionality finding." *Id.* at ¶ 28. Thus, we "cannot conclude the trial court plainly erred by failing to make the required finding regarding the proportionality of imposing consecutive sentences at the sentencing hearing." *Bland* at ¶ 21.

{¶ 23} While, as addressed above, appellant's primary argument on appeal relates to whether the trial court made the requisite statutory findings, to the extent appellant also contends the record does not support the trial court's consecutive sentencing findings, we find such contention unpersuasive. Under Ohio law, "[t]he plain language of R.C. 2953.08(G)(2) requires an appellate court to defer to a trial court's consecutive-sentence findings, and the trial court's findings must be upheld unless those findings are clearly and convincingly not supported by the record." *State v. Gwynne*, ____ Ohio St.3d ____, 2023-Ohio-3851, ¶ 5. Here, based on this court's review, we cannot clearly and convincingly find the record does not support the trial court's findings under R.C. 2929.14(C)(4). Accordingly, in light of the foregoing, and because the trial court's imposition of consecutive service is not contrary to law, appellant has failed to demonstrate error, plain or otherwise.

{¶ 24} While we find unpersuasive appellant's argument that the trial court failed to make requisite statutory findings at the sentencing hearing, appellant further maintains, and the state concedes, the trial court failed to incorporate its consecutive sentence findings into the sentencing entry. In accordance with *Bonnell*, "[a] trial court's inadvertent failure to incorporate the statutory findings in the sentencing entry after properly making those findings at the sentencing hearing does not render the sentence contrary to law; rather, such a clerical mistake may be corrected by the court through a nunc pro tunc entry to reflect what actually occurred in open court." *Id.* at ¶ 30. Further, "[a]s this is an administrative correction, a new sentencing hearing, on this matter alone, is not required." *State v. Frost*, 10th Dist. No. 20AP-416, 2023-Ohio-3637, ¶ 8.

{¶ 25} Based on the foregoing, we overrule appellant's single assignment of error and affirm the judgment of the trial court, but we "remand this case to the trial court for a

nunc pro tunc judgment entry incorporating findings stated on the record." *Hargrove* at ¶ 25.

**IV. Conclusion**

{¶ 26} Having overruled appellant's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas and remand this matter to the trial court for the limited purpose of issuing a nunc pro tunc entry correcting the clerical error in accordance with law and consistent with this decision.

*Judgment affirmed; cause remanded with instructions.*

LUPER SCHUSTER and BOGGS, JJ., concur.

_____