[Cite as *State v. Scott*, **2025-Ohio-806**.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2024-T-0088 |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| CHANTELLE A. SCOTT, JR., | |
| Defendant-Appellant. | Trial Court No. 2024 CR 00372 |

## O P I N I O N

Decided: March 10, 2025
Judgment: Affirmed in part, reversed in part, and remanded

*Dennis Watkins*, Trumbull County Prosecutor, *Ryan J. Sanders* and *Charles L. Morrow*, Assistant Prosecutors, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Eric M. Levy*, 55 Public Square, Suite 1600, Cleveland, OH 44113 (For Defendant-Appellant).

SCOTT LYNCH, J.

{¶1} Defendant-appellant, Chantelle A. Scott, Jr., appeals his convictions and sentences on drug and firearm charges following the entry of guilty pleas. For the following reasons, Scott's convictions are affirmed while his sentences are reversed and this case is remanded for further proceedings consistent with this Opinion.

{¶2} On August 20, 2024, Scott pled guilty to the following charges in the Trumbull County Court of Common Pleas: Possession of a Fentanyl-Related Compound (Count 1), a felony of the third degree in violation of R.C. 2925.11(A) and (C)(11)(c); Possession of a Fentanyl-Related Compound (Count 4), a felony of the fourth degree in

violation of R.C. 2925.11(A) and (C)(11)(b); Possession of a Fentanyl-Related Compound (Counts 6 and 7), felonies of the fifth degree in violation of R.C. 2925.11(A) and (C)(11)(a); and Having Weapons while under Disability, a felony of the third degree in violation of R.C. 2923.13(A) and (B), with a specification of forfeiture pursuant to R.C. 2941.1417(A), 2981.02(A)(1)(b) and/or (c)(i), and 2981.04.

{¶3} On September 26, 2024, Scott's sentencing hearing was held pursuant to R.C. 2929.19. The trial court sentenced Scott to thirty-six months in prison for Possession (Count 1); eighteen months in prison for Possession (Count 4); twelve months in prison for Possession (Count 6); twelve months in prison for Possession (Count 7); and thirty-six months in prison for Having Weapons while under a Disability (Count 8). The court ordered Scott to serve the sentences for Possession concurrently to each other and consecutively to the sentence for Having Weapons under a Disability for an aggregate prison term of seventy-two months. Additionally, the court imposed a mandatory fine of $5,000 as to Possession (Count 1), suspended his driver's license for a period of five years, taxed the cost of prosecution, and notified him that post-release control is discretionary for up to two years.

{¶4} On September 27, 2024, the trial court issued an Entry on Sentence.

{¶5} On October 18, 2024, Scott filed a Notice of Appeal.

{¶6} On appeal, Scott raises the following assignments of error:

[1.] Appellant's plea must be vacated in violation of Crim.R. 11 as not entered knowingly, intelligently and voluntarily.

[2.] The trial court erred and imposed a maximum consecutive prison sentence which was contrary to law and not supported by the record where the trial court failed to find all required factors and failed to determine [and] consider the aggregate maximum consecutive

2

prison sentence ordered and failed to impose post release control at the oral sentencing hearing.

[3.] Appellant received ineffective assistance of trial counsel.

{¶7} Under the first assignment of error, Scott argues that his guilty pleas are invalid on the grounds that the trial court failed to properly advise him of the maximum penalties involved. "The trial court failed to advise, at the time of the guilty plea(s) that the guilty plea(s) were subject to a sentence presumed to be in favor of prison, could result in a mandatory fine imposed and that the trial court could impose a sentence consecutively in excess of 36-months in prison. The trial court further failed to advise that Appellant's plea(s) of guilty could result in a violation of community control or post-release control." Defendant-appellant's Brief on the Merits at 2.

{¶8} "When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily." *State v. Engle*, 74 Ohio St.3d 525, 527 (1996). "Failure on any one of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." *Id.*; *State v. Dangler*, 2020-Ohio-2765, ¶ 10. "Ohio's Crim.R. 11 outlines the procedures that trial courts are to follow when accepting pleas" to "'ensur[e] an adequate record on review by requiring the trial court to personally inform the defendant of his rights and the consequences of his plea and determine if the plea is understandingly and voluntarily made.'" (Citation omitted.) *Dangler* at ¶ 11; *State v. Nero*, 56 Ohio St.3d 106, 107 (1990).

{¶9} Relevant for the present appeal is Criminal Rule 11(C)(2)(a) which provides: "In felony cases the court … shall not accept a plea of guilty … without first addressing the defendant personally … and … [d]etermining that the defendant is making the plea voluntarily, with understanding … of the maximum penalty involved, and if applicable, that

3

the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing." The duty to ensure that a defendant understands the maximum penalty is considered to be "nonconstitutional" in nature. *State v. Francis*, 2004-Ohio-6894, ¶ 29.

{¶10} "When a criminal defendant seeks to have his conviction reversed on appeal, the traditional rule is that he must establish that an error occurred in the trial-court proceedings and that he was prejudiced by that error." *Dangler* at ¶ 13. "The test for prejudice is 'whether the plea would have otherwise been made.'" *Id.* at ¶ 16, citing *Nero* at 108. "Prejudice must be established 'on the face of the record.'" (Citations omitted.) *Id.* at ¶ 24.

{¶11} There are two exceptions to the prejudice requirement: First, "[w]hen a trial court fails to explain the constitutional rights that a defendant waives by pleading guilty or no contest, we presume that the plea was entered involuntarily and unknowingly, and no showing of prejudice is required." *Id.* at ¶ 14. Second, "a trial court's *complete* failure to comply with a portion of Crim.R. 11(C) eliminates the defendant's burden to show prejudice." *Id.* at ¶ 15. "Aside from these two exceptions, the traditional rule continues to apply: a defendant is not entitled to have his plea vacated unless he demonstrates he was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C)." *Id.* at ¶ 16. The inquiry into whether a plea has been validly entered is summarized as follows: "the questions to be answered are simply: (1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of

4

demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?" *Id.* at ¶ 17.

{¶12} In addition to complying with Criminal Rule 11, "the trial court judge must convey accurate information to the defendant so that the defendant can understand the consequences of his or her decision to enter a valid plea." *State v. Clark*, 2008-Ohio-3748, ¶ 26. If the trial judge substantially misinforms a defendant about the consequences of the plea, "the defendant could not have entered the plea knowingly, intelligently, and voluntarily." *Id.* at ¶ 39. "[T]he point of this principle is '[w]hen a defendant is induced to enter a guilty plea by erroneous representations as to the applicable law, the plea has not been entered knowingly and intelligently.'" (Citation omitted.) *State v. Malorni*, 2024-Ohio-1122, ¶ 13 (11th Dist.); *State v. Mullins*, 2023-Ohio-803, ¶ 20 (8th Dist.) ("[w]hen material misinformation about a consequence of a guilty plea is conveyed to a defendant, and the court by its silence fails to correct the mistake, the failure renders the plea less than knowing, intelligent, and voluntary") (citation omitted).

{¶13} The trial judge in the present case advised Scott as follows with respect to the penalties for the charges to which he was pleading guilty:

> You're looking at potential penalties on Count One between 9 and 36 months in prison, fines up to $10,000, possible license suspension of five years; on Count Four, between 6 and 18 months in prison, fines up to $5,000, possible license suspension up to five years; on Counts Six and Seven, between 6 and 12 months in prison on each count, fines up to $2,500, a license suspension possibility up to five years; and on Count Eight, a prison sentence between 9 and 36 months in prison, fines up to $10,000.
>
> As to all these counts, prison is not presumed necessary, nor is it mandatory, so you could be placed on community control or what is known as probation for up to five years under whatever terms and

5

conditions the Court may deem appropriate. Do you understand the potential penalties?

{¶14} Scott's first argument under this assignment of error is that the trial court's advisement that "prison is not presumed necessary" for any of the charges is erroneous and renders his plea invalid. Contrary to this advisement, Possession of a Fentanyl-Related Compound in an amount between five and ten grams (Count 1), carries a presumption of prison. R.C. 2925.11(C)(11)(c) ("[i]f the drug involved in the violation is a fentanyl-related compound" and "[i]f the amount of the drug involved … equals or exceeds five grams but is less than ten grams, … there is a presumption for a prison term for the offense").

{¶15} We do not find that the trial court's incorrect statement that there was no presumption of prison with respect to Possession of a Fentanyl-Related Compound (Count 1) renders the plea invalid. The fact that a particular charge carries a presumption of prison is relatively less material or substantial than other aspects of felony sentencing, such as a mandatory prison term or ineligibility for judicial release. That the necessity of prison is merely a presumption distinguishes the present case from those where the court fails to advise a defendant that a prison term is mandatory or incorrectly advises a defendant that he or she is eligible for judicial release. In those cases, the incorrect advisements are grounds for invalidating a plea inasmuch as such failures deprive the defendant of an adequate understanding of the consequences of the plea or induce reliance on the possibility of no or reduced prison time. *State v. Robinson*, 2018-Ohio-4863, ¶ 24 (8th Dist.) ("[i]t is well settled … that where a trial court gives a defendant '*misinformation* regarding judicial release,' it may invalidate the plea"); *State v. Foster*, 2018-Ohio-4006, ¶ 35 (1st Dist.) ("[b]ecause the prospect of probation or community

6

Case No. 2024-T-0088

control would be a factor weighing heavily in favor of a plea, … the fact that a community-control sanction was statutorily precluded could affect the defendant's decision to enter a guilty plea"); *State v. Tutt*, 2015-Ohio-5145, ¶ 19 ("where a defendant faces a mandatory prison sentence as a result of a guilty or no contest plea, the trial court must determine, prior to accepting a plea, that the defendant understands that he or she is subject to a mandatory prison sentence and that as a result of the mandatory prison sentence, he or she is not eligible for probation or community control sanctions"). Unlike a mandatory prison term, a presumed prison term does not absolutely require the imposition of prison. The presumption may be removed in favor of community control sanctions where the court makes certain findings regarding the likelihood of recidivism and the seriousness of the offense. R.C. 2929.13(D)(2). Thus, while the court incorrectly stated that "prison is not presumed necessary," the advisement that Scott "could be placed on community control or what is known as probation" was accurate.

{¶16} Conclusively, the misinformation regarding the presumption of prison does not invalidate Scott's plea because there is no evidence of prejudice "on the face of the record," i.e., that Scott would not have pled guilty but for the mistaken belief that none of the charges carried a presumption of prison. *Dangler*, 2020-Ohio-2765, ¶ 24. When the record fails to demonstrate that the misinformation was material to the decision to plead guilty or otherwise induced the plea, the courts routinely affirm the validity of the plea. *Id.* ("[t]here is nothing in the record indicating that Dangler would not have entered his plea had he been more thoroughly informed of the details of the sex-offender-classification scheme"); *State v. Hill*, 2024-Ohio-2402, ¶ 29 (3d Dist.) ("Hill did *not* indicate at the change-of-plea hearing that he was pleading guilty based on the possibility of judicial

7

release"); *compare Malorni*, 2024-Ohio-1122, at ¶ 20 (11th Dist.) ("it is evident on the face of the record that Malorni relied on these inaccurate oral advisements when entering her plea").

{¶17} Scott argues that, at the time of the plea hearing, he was on house arrest and "believed he would remain out on house arrest and be given an opportunity to argue for community control." Defendant-appellant's Brief on the Merits at 13. Instead, the trial court revoked Scott's bond following the plea hearing: "He's got a horrible criminal record which I've just reviewed, which I did not have before. Bond is revoked until sentencing." It is not at all evident from the record how the court's erroneous advisement that there was no presumption of prison for Possession of Fentanyl-Related Compound had any connection with his subjective belief that he would remain on house arrest until sentencing and, more importantly, that his subjective belief had any connection with the decision to plea. On the contrary, the court advised Scott during the plea colloquy that it could "go straight to sentencing" while Scott represented that he had not been promised anything in exchange for plea. Moreover, the written plea agreement, which correctly advised Scott that for Count 1 a prison term was "presumed necessary," stated that the underlying agreement was based on the State dismissing Counts 2, 3, 5, and 9. The agreement is silent regarding whether bond would be continued until sentencing.

{¶18} Scott's second argument under the first assignment of error is that the trial court's failure to advise him at the plea colloquy that Possession of a Fentanyl-Related Compound (Count 1) included a mandatory fine renders his plea invalid. The court correctly advised Scott that the potential penalties for Count 1 included "fines up to $10,000" but failed to advise that a fine of $5,000 would be mandatory. R.C.

8

Case No. 2024-T-0088

2925.11(E)(1)(a) ("[i]f the violation is a felony of the … third degree, the court shall impose upon the offender the mandatory fine"); R.C. 2929.18(B)(1) ("the sentencing court shall impose upon the offender a mandatory fine of at least one-half of, but not more than, the maximum statutory fine amount authorized for the level of the offense pursuant to division (A)(3) of this section [$10,000]").

{¶19} Applying the analytical framework set forth in *Dangler*, we conclude that the failure to advise Scott of the mandatory minimum fine of $5,000 does not invalidate his plea to Possession (Count 1). Initially we find that the trial court was required to advise Scott that he was subject to a mandatory minimum fine either as part of its duty under Criminal Rule 11(C) to ensure that Scott understood the maximum penalty involved or under its constitutional duty to ensure that Scott understood the consequences of entering his plea. *State v. Rogers*, 2020-Ohio-4102 (12th Dist.), ¶ 14 ("[t]he trial court's failure to advise Rogers of the mandatory fine during the plea colloquy does not comply with the requirement of Crim.R. 11(C)(2)(a) that a trial court 'first' determine a defendant's understanding of the maximum penalty before accepting the plea"); *compare Boyd v. Yukins*, 99 Fed.Appx. 699, 702-703 (6th Cir. 2004) ("[f]or a plea to be intelligent and knowing, … the defendant must be informed about any mandatory minimum sentences, which may impact the defendant's decision to plead guilty").

{¶20} We next consider whether Scott is excused from the burden of demonstrating prejudice and conclude that he is not excused. As noted above, the right to be advised of the maximum penalty involved is nonconstitutional in nature. *Supra* at ¶ 9. Nor was there a complete failure to advise Scott of the maximum penalty with respect to a fine. The court properly advised him that the maximum possible fine was $10,000

9

Case No. 2024-T-0088

but failed to mention the mandatory minimum fine of $5,000. *State v. Fabian*, 2020-Ohio-3926, ¶ 20 (12th Dist.) ("a complete failure to comply with Crim.R. 11(C)(2)(a) involves a trial court's complete omission in advising about a distinct component of the maximum penalty [such as a prison sentence, a fine, postrelease control, or statutory registration and notification requirements]," whereas "a trial court's mention of a component of the maximum penalty during a plea colloquy, albeit incomplete or perhaps inaccurate, does not constitute a complete failure to comply with Crim.R. 11(C)(2)(a)"). Accordingly, it is necessary for Scott to demonstrate prejudice.

{¶21} With respect to prejudice, Scott argues that he "was indigent and did not expect a mandatory fine." Defendant-appellant's Brief on the Merits at 13. We find no demonstrable prejudice. While Scott may not have expected a mandatory fine, he was duly advised of the possibility of a fine. Nor is there any indication that Scott would not have pled guilty had he been properly advised about a mandatory fine. As will be discussed under the third assignment of error, Scott's indigency undermines a claim of prejudice inasmuch as it should have allowed him to avoid the imposition of a fine, even a mandatory one.

{¶22} Scott's third argument under the first assignment of error is that there was a complete failure by the trial court to advise him that his guilty pleas constitute a violation of other community control sanctions and that any prison terms imposed for the violations would have to be served consecutively to any prison terms imposed in the present case.

{¶23} For this argument, Scott relies on the Ohio Supreme Court's decision in *State v. Bishop*, 2018-Ohio-5132. In *Bishop*, the court held "that Crim.R. 11(C)(2)(a) requires a trial court to advise a criminal defendant on postrelease control for

10

a prior felony, during his plea hearing in a new felony case, of the trial court's authority under R.C. 2929.141 to terminate the defendant's existing postrelease control and to impose a consecutive prison sentence for the postrelease-control violation." *Id.* at ¶ 21. The failure to make this advisement constitutes a complete failure to comply with the rule so that prejudice need not be demonstrated. *Id.* at ¶ 20.

{¶24} *Bishop*, however, has no application in the present circumstances inasmuch as Scott was not on postrelease control or a community control sanction at the time he entered his pleas. During the plea colloquy, Scott was asked if he was "on any kind of probation or community control in this state or any other state" and replied, "no." Scott's criminal record confirms his reply. Even presuming Scott was under some such sanction for the sake of argument, the trial court in the present case neither terminated postrelease control in another case nor imposed a consecutive sentence for a violation of postrelease control in another case.

{¶25} The first assignment of error is without merit.

{¶26} In the second assignment of error, Scott challenges the imposition of consecutive sentences and the imposition of maximum sentences for all counts.

{¶27} "The court hearing an appeal [of a felony sentence] shall review the record, including the findings underlying the sentence or modification given by the sentencing court." R.C. 2953.08(G)(2). "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing … if it clearly and convincingly finds either … [t]hat the record does not support the sentencing court's findings under division … (C)(4) of section 2929.14 [to impose consecutive sentences]" or "[t]hat the

11

Case No. 2024-T-0088

sentence is … contrary to law." R.C. 2953.08(G)(2)(a) and (b); *State v. Marcum*, 2016-Ohio-1002, ¶ 1. "[A] sentence is contrary to law when it does not fall within the statutory range for the offense or if the trial court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12." (Citations omitted.) *State v. Boone*, 2024-Ohio-6116, ¶ 33 (11th Dist.).

{¶28} "A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing." R.C. 2929.11(A). "The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." *Id.*

{¶29} "[A] court that imposes a sentence … upon an offender for a felony has discretion to determine the most effective way to comply with the purposes and principles of [felony] sentencing." R.C. 2929.12(A). "In exercising that discretion, the court shall consider the factors … relating to the seriousness of the conduct, the factors … relating to the likelihood of the offender's recidivism, and … may consider any other factors that are relevant to achieving those purposes and principles of sentencing." *Id.* A non-exhaustive list of factors relating to the seriousness of the offender's conduct and likelihood of recidivism is set forth in divisions (B), (C), (D), and (E) of R.C. 2929.12. "Nothing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *State v. Jones*, 2020-Ohio-6729, ¶ 42, *also* at ¶ 39 ("R.C. 2953.08(G)(2)(b) … does not provide a basis

12

for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12").

{¶30} Scott's first argument under this assignment of error is that the trial court failed to make the necessary findings to impose consecutive sentences.

{¶31} The default rule in Ohio is that "a prison term, jail term, or sentence of imprisonment shall be served concurrently with any other prison term, jail term, or sentence of imprisonment imposed by a court of this state, another state, or the United States." R.C. 2929.41(A). Nevertheless, the following provision is made for the imposition of consecutive sentences:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).

13

Case No. 2024-T-0088

**{¶32}** "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *State v. Bonnell*, 2014-Ohio-3177, ¶ 37. "Nor is it required to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry." *Id.*

**{¶33}** The trial court made the following findings at the sentencing hearing with respect to consecutive sentences:

> Pursuant to Revised Code Section 2929.14, the Court finds that it is necessary to protect the public from future crime of the defendant, that consecutive sentences are not disproportionate to the seriousness of the offender's conduct, that some of these offenses were committed while he was on PRC or community control or awaiting trial, that due to the conduct of the defendant, no single prison term would adequately reflect the seriousness of the conduct of the defendant, the defendant's criminal history clearly demonstrates that consecutive sentences are necessary to protect the public.

**{¶34}** Scott argues: "the trial court failed to make all findings required under R.C. 2929.14(C)(4) on the record at the sentencing hearing where it failed to consider whether consecutive sentences were not disproportionate to the danger the offender posed to the public which is a separate finding to the proportionality to the seriousness of the offender's conduct." Defendant-appellant's Brief on the Merits at 15-16. Stated otherwise, the court's failure to find that consecutive sentences are not disproportionate "to the danger [Scott] poses to the public" requires the imposition of consecutive sentences to be vacated. *State v. Miller*, 2024-Ohio-2578, ¶ 10 (8th Dist.) ("the proportionality finding is stated as a conjunctive phrase and the trial court is required to consider the proportionality

14

of the sentence regarding both the seriousness of the offender's conduct and the danger the offender poses to the public") (citation omitted).

{¶35} This Court and a multitude of other appellate districts have rejected the position that the failure to expressly make a proportionality finding with respect to the danger the offender poses to the public renders the imposition of consecutive sentences invalid. *State v. Williams*, 2024-Ohio-5999, ¶ 19 (11th Dist.) ("[t]he record … support[s] a conclusion that the court considered that the consecutive sentences were not disproportionate to the danger presented by the defendant to the public despite not using the exact words in the statute"). The courts so holding cite the Ohio Supreme Court's statement that "a word-for-word recitation of the language of the statute [R.C. 2929.14(C)] is not required, and as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Bonnell*, 2014-Ohio-3177, at ¶ 29. It has also been often remarked that there is a "'high degree of overlap' between a proportionality finding under [R.C. 2929.14(C)] and a finding under R.C. 2929.14(C)(4)(b) regarding the seriousness and severity of the harm caused by an offender's conduct." (Citation omitted.) *State v. Vokas*, 2024-Ohio-171, ¶ 20 (10th Dist.). "Thus, in the appropriate context, a trial court's findings may be applicable to more than one statutory requirement." *State v. Contes*, 2024-Ohio-2580, ¶ 17 (8th Dist.); *State v. Polhamus*, 2014-Ohio-145, ¶ 28 (2d Dist.) (affirming the imposition of consecutive sentences where "the trial court stated 'that consecutive sentences are necessary to protect the public from future crime, and that a consecutive sentence is not disproportionate to the seriousness

15

of the Defendant's conduct'" but "did not recite the next phrase in the statute, 'and to the danger the offender poses to the public'").

{¶36} Here, it is evident from the record that the trial court did consider the proportionality of consecutive sentences with respect to the danger Scott poses to the public. The court did state that consecutive sentences were not disproportionate to the seriousness of Scott's conduct generally and that Scott's criminal history demonstrated that consecutive sentences were necessary to protect the public. In other comments, the court stressed the nature and circumstances of Scott's criminal activity. The court recognized that Scott was in possession of an AK-47 and $3,400 in cash and that, despite only pleading to possession of drugs, Scott was, in fact, a drug dealer. The court further noted that Scott had prior felony convictions including a conviction for Having Weapons while under Disability: "There's a reason we have gun laws in this country, to prevent convicted felons like you from having a gun in your possession to go out and cause harm to someone else. And you do it anyway." In addition to a prior conviction of Having Weapons while under a Disability, Scott had served time in prison for Possession of Drugs and Receiving Stolen Property. Given the foregoing, it is evident that the court engaged in the appropriate proportionality analysis with respect to the danger Scott poses to the public despite its failure to employ the precise words of the statute.

{¶37} Although not raised as error, we note that the trial court's finding that "some of these offenses were committed while he was on PRC or community control or awaiting trial" may not be supported by the record. As discussed under the first assignment of error, it was represented and accepted at the plea hearing that Scott was not under any kind of probation or community control at the time he entered his pleas. As reported in

16

the Pre-Sentence Investigation report, Scott does not appear to have been under post-release control or a community control sanction or awaiting trial at the time he committed the underlying offenses on October 6, 2022, although Scott committed several additional felonies after that date. Assuming, arguendo, that the court's finding under R.C. 2929.14(C)(4)(a) is invalid, consecutive sentences would nevertheless be affirmed given the court's alternative finding under R.C. 2929.14(C)(4)(c) that "the defendant's criminal history clearly demonstrates that consecutive sentences are necessary to protect the public."

{¶38} Scott's second argument under the second assignment of error is that the trial court improperly imposed maximum sentences without "mak[ing] the proper statutory considerations" or "determin[ing] Appellant to be the worst type of offender." Defendant-appellant's Brief on the Merits at 18.

{¶39} We summarily reject this argument as there are no statutory considerations particular to the imposition of maximum sentences including whether the defendant is the worst type of offender. Trial courts are not "required to make findings or give their reasons for imposing maximum … or more than minimum sentences." *State v. Mathis*, 2006-Ohio-855, ¶ 37. Inasmuch as the court is required to consider the purposes and principles of felony sentencing, including consideration of the seriousness and recidivism factors, the court in the present case expressly stated that it did so. Under *Jones*, 2020-Ohio-6729, the court's consideration of these matters is not subject to review.

{¶40} Scott's final argument under this assignment of error is that the trial court failed to orally impose post-release control at the sentencing hearing.

17

Case No. 2024-T-0088

{¶41} "It is established that 'a trial court has a statutory duty to provide notice of postrelease control at the sentencing hearing,'" including "the term of supervision … and the consequences of violating postrelease control." (Citation omitted.) *State v. Bates*, 2022-Ohio-475, ¶ 11; R.C. 2929.19(B)(2)(e) and (f) ("if the sentencing court determines at the sentencing hearing that a prison term is necessary or required, the court shall … [n]otify the offender that the offender may be supervised under section 2967.28 of the Revised Code [post-release control] after the offender leaves prison" and, "if the offender violates that supervision or a condition of post-release control …, the parole board may impose a prison term").

{¶42} The trial court in the present case failed to provide any sort of notification regarding postrelease control (although notification of post-release control was given at the plea hearing and contained in the written Entry on Sentence). A statutory remedy for the failure to provide post-release control notifications at sentencing is provided for in R.C. 2929.191(C). *State v. Freetage*, 2021-Ohio-4050, ¶ 41 ("R.C. 2191.191 governs that the sentencing is not void but is subject to a hearing with the limited purpose of providing the Appellant with notice of mandatory post-release control"). However, given our disposition of the third assignment of error, Scott will be entitled to a new sentencing hearing at which the notifications may be duly given.

{¶43} The second assignment of error has merit to the extent indicated above.

{¶44} Under the third assignment of error, Scott maintains that he received ineffective assistance of counsel during the course of his sentencing with respect to the merger of the Possession offenses and with respect to the mandatory fine for Possession (Count 1).

18

Case No. 2024-T-0088

{¶45} "The Sixth Amendment provides, 'In all criminal prosecutions, the accused shall enjoy the right … to have the Assistance of Counsel for his defence.'" *State v. Taylor*, 2024-Ohio-1752, ¶ 22. A claim of ineffective assistance of counsel arises when a defendant shows "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [him] by the Sixth Amendment." (Citation omitted.) *State v. Bates*, 2020-Ohio-634, ¶ 24. "To establish ineffective assistance, [a defendant] must show (1) that defense counsel's performance was deficient, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's deficient performance prejudiced him, i.e., that there is a reasonable probability that but for counsel's errors, the proceeding's result would have been different." *State v. Nicholson*, 2024-Ohio-604, ¶ 318. "A reasonable probability is a probability sufficient to undermine [the court's] confidence in the outcome." (Citation omitted.) *Id.*

{¶46} Ohio's allied-offenses statute provides: "Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." R.C. 2941.25(A). Stated otherwise, "[a] defendant may be indicted and tried for allied offenses of similar import, but may be sentenced on only one of the allied offenses." *State v. Whitfield*, 2010-Ohio-2, ¶ 17, 18 ("R.C. 2941.25(A)'s mandate that a defendant may be 'convicted' of only one allied offense is a protection against multiple sentences rather than multiple convictions").

{¶47} "An accused's failure to raise the issue of allied offenses of similar import in the trial court forfeits all but plain error, and a forfeited error is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest

19

miscarriage of justice." *State v. Rogers*, 2015-Ohio-2459, ¶ 3. "Accordingly, an accused has the burden to demonstrate a reasonable probability that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus; absent that showing, the accused cannot demonstrate that the trial court's failure to inquire whether the convictions merge for purposes of sentencing was plain error." *Id.*

**{¶48}** In the present case, Scott pled guilty to four Counts of Possession of a Fentanyl-Related Compound: Count 1 was premised on possession of between five and ten grams of the drug (R.C. 2925.11(C)(11)(c)); Count 4 was premised on possession of between one and five grams of the drug (R.C. 2925.11(C)(11)(b)); Counts 6 and 7 were premised on possession in an unspecified amount (R.C. 2925.11(C)(11)(a)). At the plea hearing, the prosecutor provided the following factual basis for the charges:

> Your Honor, on or about the date referenced in the indictment [October 6, 2022], in Trumbull County, State of Ohio, officers with the Liberty Township Police Department found this defendant in possession of 3.25 grams of Fentanyl, .46 grams of Fentanyl, .34 grams of Fentanyl, 3.25 grams of Fentanyl, and at the same time the defendant was also in possession of the three firearms indicated in the indictment, he has a prior conviction in 16-CR-485 out of Columbiana County for a drug abuse offense, and he was in possession of $3,429.

Scott correctly observes that these amounts do not sustain the charges to which he pled (no single amount exceeded five grams) unless the amounts are aggregated. And, if the amounts are aggregated, then some of the Possession counts must be allied offenses inasmuch as they are based on the same conduct, i.e., possession of the same Fentanyl in individual and aggregate amounts.

**{¶49}** Based on the foregoing, we conclude that counsel was ineffective for failing to raise the issue of merger prior to sentencing and that, given the disparity between the

20

Case No. 2024-T-0088

charges and the prosecutor's statement of the factual basis for the charges, there was a reasonable probability that Scott was prejudiced by counsel's failure. However, an examination of the Pre-Sentence Investigation report indicates that the prosecutor may have erroneously stated the amounts of Fentanyl in Scott's possession, specifically that the first mention of 3.25 grams of Fentanyl should have been 6.59 grams consistent with Count 1 of the indictment.[1] Regardless of whether Scott is entitled to merger or whether a clarification of the factual bases for the charges is necessary, the matter is one that should have been raised and resolved by the trial court prior to sentencing.

{¶50} Scott also argues that counsel was ineffective for not filing an affidavit of indigency to mitigate the $5,000 mandatory fine imposed under Count 1 (discussed *supra* at ¶ 20-21).

{¶51} "If an offender alleges in an affidavit filed with the court prior to sentencing that the offender is indigent and unable to pay the mandatory fine [imposed for a 'third degree felony violation of any provision of Chapter 2925. … of the Revised Code'] and if the court determines the offender is an indigent person and is unable to pay the mandatory fine described in this division, the court shall not impose the mandatory fine upon the offender." R.C. 2929.18(B)(1).

{¶52} This court has held that "[t]he failure to file an affidavit attesting to a defendant's indigency establishes ineffective assistance of counsel when the record

---

1. We note that any misstatement by the prosecutor regarding the factual basis for the charges does not, in the present case, implicate the validity of the guilty pleas themselves. "A guilty plea admits the facts set forth in the indictment, not the facts set forth at the plea hearing." *State v. Greathouse*, 2004-Ohio-3402, ¶ 8 (2d Dist.). *See State v. Swazey*, 2023-Ohio-4627, ¶ 30 ("guilty pleas … are confessions of the facts charged in indictments"); *Craig v. State*, 49 Ohio St. 415, 418 (1892) ("a plea of guilty, from an early period in the history of criminal procedure, both in England and in the several states of the Union, has been regarded as an admission of every material fact well pleaded in the indictment").

21

shows a reasonable probability that the trial court would have found the defendant indigent." *State v. Murray*, 2023-Ohio-3762, ¶ 17 (11th Dist.). We find that there was a reasonable probability that the trial court would have found Scott indigent and, therefore, that counsel was ineffective for not filing an affidavit of indigency. We note that Scott was represented by a public defender before the trial court, was granted a $5 monthly payment plan toward court costs based on indigency, and filed an affidavit of indigency with his Notice of Appeal.

**{¶53}** The third assignment of error is with merit.

**{¶54}** For the foregoing reasons, Scott's convictions are affirmed, his sentences are reversed, and this matter is remanded for a new sentencing hearing consistent with this Opinion. Costs to be taxed against the appellee.

ROBERT J. PATTON, P.J.,

EUGENE A. LUCCI, J.,

concur.